G. W. FAISON *v.* S. W. JOHNSON ET AL.

1. EXECUTION.  *Death of defendant.  Revivor.  Code 1880, § 1744.*

   Where, before issuance of execution, one of several judgment defendants dies, a sale of his property thereunder, without previous revivor against the heirs, is void.  Code 1880, § 1744.

2. TAX-SALE.  *Who may buy.  Obligation to pay the taxes.*

   A creditor who has previously charged the account of his debtor with the taxes due on the latter's land, and thus come under obligation to pay them, cannot acquire a tax-title at the sale for such taxes.

3. VOID SALE UNDER EXECUTION AND MORTGAGE.  *Purchaser a trustee.*

   A judgment creditor, under such obligation to pay his debtor's taxes, and who also held a trust-deed covering his debtor's land, caused the same to be sold under an execution issued after the debtor's death, and without revivor against the heirs, and, on the same day, sold under the trust-deed and suffered a sale for taxes, becoming the purchaser at all three sales, intending to concentrate the titles in himself.  The debt secured by the trust-deed was shown to be in large part satisfied.  *Held,* the creditor was rightly decreed a trustee of the title for the heirs.

FROM the chancery court of Sunflower county.

HON. W. R. TRIGG, Chancellor.

The appellees, children and heirs of Nancy E. Johnson, filed this bill against G. W. Faison, seeking to vacate certain sales, under which the latter had acquired title to and possession of lands belonging to their said mother, and to have him declared trustee in possession for them.

In August, 1883, Faison, the appellant, recovered a judgment against Nancy E. Johnson and her husband, Frank Johnson, for about $1,200, in pursuance of an office confession of judgment. She was also indebted to Faison upon an open account running through several years, and up to the time of her death. In 1882, she and her husband, Frank Johnson, had executed a trust-deed on the land in controversy, to secure Chaffe & Powell, of New Orleans, La., in an indebtedness, evidenced by note, of $1,641.75; and soon after her death, which occurred in November, 1883, Faison purchased from Chaffe & Powell their said debt and trust-deed.

During these transactions, a suit was pending against Nancy E. Johnson, in her life-time, and, after her death, against appellees, as her heirs, in which an adverse claim to the lands was asserted by Julia Porterfield. The title was further complicated by a levy, under a judgment against Frank Johnson, on the interest, which, as one of the heirs of Nancy Johnson, he had acquired at her death. But proceedings under this judgment were in some manner stayed by appellant Faison.

While matters were in this condition, Faison had execution issued upon the judgment aforesaid without first reviving it against the heirs, the execution reciting the fact of Nancy E. Johnson's death, as required by § 1744, code 1880. This execution was levied on a part of the land in controversy, and it was advertised to be sold March 2, 1885. Faison also procured the trustee to advertise the land for sale on the same day under the trust-deed. The taxes on the

lands for 1884 were not paid, and they were likewise adver-
tised to be sold for taxes on the second of March, 1885. Rel-
ative to the taxes, it was shown that Faison, who carried on
his mercantile books an account against Nancy E. Johnson,
which was continued in the same way after her death, had,
in February, 1885, charged in the account the amount of the
taxes on the land for 1884, as being paid by him.

Thus, Faison had either procured or allowed three separate
sales of the land to be made on March 2, 1885, and at each
sale he himself became purchaser, bidding at the execution
sale, which, however, did not embrace all the land, the sum
of $616, and at the trustee's sale, which occurred immediately
afterward, bidding the sum of $2,820, and at the sale for taxes
bidding the amount of the taxes due. Having received deeds
under each purchase, Faison took possession of the land.

This bill has been filed by the heirs of Nancy E. Johnson
other than Frank Johnson, her husband, and seeks to set
aside the several sales under which Faison claims the land,
and to have him declared a trustee of the legal title, which
complainants acquired as heirs of Nancy E. Johnson, their
mother. They allege that they were ignorant of the true
condition of the account and indebtedness between Faison
and their mother, and prayed discovery as to the balance due,
and offered to redeem. The bill also averred that the three
sales of the land were brought about under a verbal agree-
ment with Faison that he should buy at the sales, and shelter
in himself the legal title pending the litigation with Mrs.
Porterfield, and that complainants should continue to pay
the indebtedness, and, when the litigation was over, and the
debts paid, by rents or otherwise, the title was to be recon-
veyed by Faison. There was evidence tending to show this,
but Faison denied the existence of any such agreement.

The other facts necessary to an understanding of the case,
as found by the court from the record, are stated in the opin-
ion. The court below decreed in favor of complainants, and
defendant, Faison, appeals.

The view taken by this court of the facts renders it unnecessary to set out the very elaborate briefs of counsel touching the questions of law discussed by them.

*Campbell & Starling*, for appellant.

*W. G. Phelps*, for appellees.

Argued orally by *R. B. Campbell*, for appellant, and *W. G. Phelps*, for appellees.

WOODS, J., delivered the opinion of the court.

The principal contention in the court below, as well as here, is addressed to the power of a court of equity to enforce the verbal agreement which, it is insisted by the appellant's counsel, was made to purchase the lands, and re-convey on the subsequent satisfaction of his debt and the defeat of the Porterfield claim, despite and in the face of our statute of frauds. This serious question, with every other presented, and the voluminous record also in the case, has been protractedly examined. But, in the view which we take of another question, lying before this principal one, we find it unnecessary to make any decision of the latter.

Under the indisputable facts of the case, and under the circumstances which marked the three sales by which appellant seeks to defend his title to the lands, must he not, in equity, be held a trustee in possession and accountable to the real owners?

The three sales all were made on the same day, and at the same time and place, and appellant was consecutively the purchaser at each sale. The conclusion is strong that his purpose was to concentrate all titles, from all sources, in himself, and to fortify himself against attack.

The execution sale could, in no event, have been made of more than the undivided interest in the lands of Frank Johnson. N. E. Johnson, the other judgment debtor, had

long been dead, and there had been no revivor against her heirs. The whole estate in the lands put up, was, however, sold, and the value of the equity of redemption, under the trust-deed, was thus practically destroyed an instant before the same lands, and others, were offered for sale under the trust-deed. The execution sale of the interests of the heirs of N. E. Johnson was without authority in law, and must be declared void in any direct proceeding instituted by the heirs for that purpose. If the purchase at the execution sale were dissociated from the other sales, and were otherwise unobjectionable, the appellant might successfully defend as to the undivided interest of Frank Johnson. But, under the circumstances attending all the sales, we hold that even this undivided interest was improperly sold, and that the heirs of N. E. Johnson are entitled to have his title to that claimed under the execution sale also declared void.

The sale made under the trust-deed was made immediately after the sale under execution. We have already seen that the equity of redemption in all the lands included in the sale under execution had been practically destroyed by the course of the judgment creditor, whereby these appellees suffered wrong. But, in addition, it is clear to our minds that the sale under the trust-deed conferred on appellant no title, other than that of trustee for appellees, for the excellent reason that the debt due appellant, and secured by the trust-deed, had actually been satisfied in large part, if not wholly, before this sale was made under it; and this the appellant knew, or should have known; but this the appellees did not know, and only first knew from the disclosures made in appellant's answer to their bill of complaint, and in the exhibits filed therewith. A sale, under which appellant asserts title, was made for a debt already paid, and appellant bid nearly $3,000 for the lands (about $1,000 more than was due him on the note secured by the trust-deed, as now perfectly appears, even on his own theory and on his own showing), and yet paid not a single dollar of the purchase-price. That

this sale is voidable by the heirs of N. E. Johnson is too plain to admit of disputation.

The tax-sale fails also to invest appellant with the real title. This sale was made with the other sales which we have considered. It was made to be part and parcel of the scheme to concentrate all titles in appellant, and to fortify them there. But, by appellant's own books of account, no dispassionate mind can fail to be convinced that, before this tax-sale took place, the appellant had charged into the general open account (exhibit 11 to answer) the large sum necessary to pay the taxes for which he permitted the land to be sold. It is certain that he had put himself under the duty of paying these very taxes, and the proof of this is found in an entry on his account-book made several days before the tax-sale. He himself affords the evidence of his having permitted the lands to be sold for taxes unpaid, when he was responsible for the delinquency.

On these facts, and under these circumstances, a court of equity must hold that the appellant is trustee in possession for the appellees, and he is to be treated and held to account in the same manner and to the same extent as other trustees under ordinary circumstances.

The correct result was arrived at in the decree of the court below, and the same is accordingly

*Affirmed.*